No. 5882.

## J. H. MILLIKEN & Co. *v.* CALLAHAN COUNTY.

1. PARTIES—JOINDER OF CAUSES OF ACTION.—It is not error to join in the same suit, claims for property converted, and for damages proximately resulting from a breach of contract, when the matters relied on for a recovery are connected with and grew out of the same cause of action and subject matter in dispute; in such an action it is proper to join all

the parties as plaintiffs or defendants, who have so participated in the transaction as to render them interested in the determination of the suit.

2. PLEADING—EXHIBITS.—When a paper is made an exhibit in a plea, and its verity is alleged, it must be taken in aid and explanation of the averments in the pleading which refer to it.

3. CONSTRUCTION OF CONTRACTS.—All preliminary negotiations, whether written or unwritten, which have led to the execution of a contract, are deemed to have been merged in it, and the writing which consummates the contract must be taken as expressing the views of the parties.

4. SAME—EVIDENCE.—While contemporaneous writings may be considered, in construing a contract, when they are reciprocally dependent, and the meaning of one can not be wrought out, without considering the other, they can not be considered for the purpose of showing that the parties did not agree upon a stipulation, plainly expressed in a writing which purports to be the final and only contract between the parties.

5. CONTRACT.—A contract and bond executed by contractors and their sureties, with the commissioners of a county, some of the provisions of which were not in accord with a former order of the county commissioners court which referred to the contract, can not be avoided by the contractor and sureties who thus assented to a disregard of the prior order.

APPEAL from Stephens.    **Tried below** before the Hon. T. B. Wheeler.

*B. G. Bidwell* and *McCall & McCall*, for appellants: On their proposition that the court erred in overruling the defendant's first and fifth special exceptions, because there was a misjoinder of parties and causes of action, as shown in plaintiff's amended petition, they cited 2 Sutherland on Damages, 451; 2 Greenleaf on Evidence, section 256; Baylies on Surety and Guardian, 144, 145.

That the court erred in overruling the defendant's sixth special exception and in overruling the defendant's motion in arrest of judgment, because there was no sufficient breach of the bond alleged, especially asked as to defendant Sam Cutbirth, they cited Rule 10, District Court Practice; 47 Texas, 620; 48 Texas, 107.

That the court erred in allowing plaintiff to prove by I. N. Jackson and John McDonald that on the twenty-sixth or twenty-seventh of October, 1883, the county of Callahan issued eight bonds, bearing interest from said date, redeemable in fifteen years, and delivered them to J. H. Milliken, because the sureties, defendants in this suit, were not parties to any such agreement or contract, never consented to the same and were not bound by

the same, they cited 57 Texas, 367; 45 Texas, 71; Baylies on Surety and Guardian, 144–146 and notes; 5 Wait's Actions and Defenses, page 231, et seq.; 34 American Reports, 616; 32 American Reports, 237; 9 Wheaton, 703; 15 Peters, 187; Daniel on Negotiable Instruments, sections 1376, 1377, 1378; 10 American Decisions, 237 and note; 17 American Reports, 103.

That the court erred in not allowing the defendants to show that a new contract was made by Milliken & Co. with plaintiff after the signing of the bond sued on, they cited 5 Texas, 512; 1 Parsons on Conveyances, page 448.

*J. S. Bell* and *Flemming & Moore,* for appellee:  On their proposition that the bond being attached as an "exhibit" to the petition, no objection to the introduction thereof in evidence on the ground of variance could be sustained, they cited Spencer v. McCarty, 46 Texas, 215.

That there was no error in excluding the order of the court as complained of by appellant, they cited 1 Greenleaf on Evidence, 275, 276; Insurance Co. v. Lyman, 15 Wall, 690.

That that the evidence offered was a mere effort to vary a written contract by parol evidence, or, if a new contract or novation, was without consideration, they cited 1 Greenleaf on Evidence, 303.

WILLIE, CHIEF JUSTICE.  On the nineteenth of September, 1883, the county commissioners court of Callahan county entered upon its minutes the following order: "Ordered by the court that thirty-one thousand dollars of Callahan county bonds be issued to bear interest at six per cent per annum from date, payable to J. H. Milliken & Co., or bearer, said bonds to be lithographed at the expense of J. H. Milliken & Co. in denominations of one thousand dollars each, and to be delivered to the First National Bank of Weatherford, Texas, for the credit of J. H. Milliken & Co., upon the approval of the bond required of the said J. H. Milliken & Co. as contractors for the erection of said court house." Subsequently, but upon the same day, a contract was signed by Milliken & Co. and the county judge and the county commissioners for the building of the court house, which provided that thirty-one thousand dollars in bonds should be delivered to Milliken & Co. at the discretion of Callahan county.  On the same day Milliken entered into a bond in the sum of fifty thousand dollars for the faithful performance of

this contract, which bond was also signed by several persons as sureties. It was approved by the commissioners court October 26, 1883. On the same day the order of September 19, 1883, was rescinded and another entered directing the issuance of bonds to the amount of sixteen thousand dollars to be delivered to Milliken & Co., and that fifteen thousand dollars more of bonds be issued upon completion of the building. The sixteen thousand dollars in bonds were delivered to Milliken & Co., but they failed to build the court house, and this suit was brought by the county to recover damages arising from a breach of the contract. The plaintiff claimed that the fifty thousand dollars mentioned in the bond were liquidated damages; but if mistaken in this, prayed for forty thousand dollars actual damages suffered by reason of the breach of the contract. As actual damages the plaintiff claimed thirty-two thousand dollars, the value of the bonds delivered to Milliken & Co., which had passed into the hands of innocent purchasers without notice; and two thousand dollars paid for the hire of guards to protect the records and papers of the county from fire since the expiration of the time when, according to contract, the house was to be completed.

The defendants demurred generally, and as a special exception set up that there was a misjoinder of parties and actions in the petition; and that neither the sureties nor Milliken & Co. were responsible on the bond for the money or bonds received from the county; also that the petition did not allege that Cutbirth, one of the defendants, had signed the bond. The sureties pleaded, among other things, that they signed the bonds with the understanding that the county was to deposit its bonds to the amount of thirty-one thousand dollars with the First National Bank of Weatherford to the credit of Milliken & Co. as soon as the bond was signed and approved, and that the county had failed to do so, and that in this respect the contract had been changed without their consent, and that they were thereby relieved from responsibility. Milliken & Co. claimed in their answer that they had entered into a new contract with plaintiff, whereby the plaintiff paid them on the twenty-sixth of October, 1883, sixteen thousand dollars in bonds, and was to pay fifteen thousand dollars more in the February following; that they had performed their part of the contract up to February, but that plaintiff failed to deliver the fifteen thousand dollars of bonds as it had agreed on its part. They pleaded in reconvention ten

thousand dollars value of work done, and of profits that would have accrued had the plaintiff not defaulted in performing its part of the contract. The general and special exceptions were overruled, and a trial on the merits had, which resulted in a verdict for plaintiff for sixteen thousand dollars and interest at six per cent from the twenty-sixth of October, 1883, to December 2, 1885, the date of the verdict.

Judgment was rendered accordingly, and from this judgment the defendant has appealed to this court.

The demurrers were properly overruled. The matters relied on for a recovery by the plaintiff were connected with and grew out of the same cause of action and the subject matter in dispute, and under our system of pleading it was proper to join them all in the same suit, as well as the parties necessary to be brought before the court of their proper determination. (Railroad Company v. Graves, 50 Texas, 181; Walcott v. Hendrick, 6 Texas, 406.) A prayer for alternative relief is, of course, allowable; and, although the plaintiff was not entitled to recover the fifty thousand dollars as liquidated damage, no harm resulted to the defendants by reason of its claiming that character of damages, as the jury did not allow them in their verdict.

The omission of the name of Cutbirth from those who signed the bond did not render the petition liable to exception. The allegation of the petition as to the parties who obligated themselves, is that the bond, when presented to the court was signed by certain defendants, naming them, and omitting Cutbirth. The allegation then is that all and each of said defendants bound themselves, etc. The bond itself is made an exhibit to the petition, and must therefore be taken in aid and explanation of its allegations. The name of Cutbirth appears to the bond with the other defendants, clearly showing that by the "said defendants" who were bound by the instrument, was meant all of those who were sued, including Cutbirth. This is the proper office of an exhibit as is declared by the rules and decisions of this court. (Rule 19, 47 Texas, 620; Burks v. Watson, 48 Texas, 114.) What has been said disposes of the objection to the introduction of the bond in evidence. Between it and the exhibit there was no variance.

The defendants offered in evidence the order of the commissioners court of date of September 19, 1883, which was objected to by the plaintiff on the ground that it was negotiative and minutes occurring and entered previous to writing the contract

for the building of the court house, and could not be introduced to vary the written contract afterwards made by the parties. This objection was sustained by the court, and the order excluded, and upon this error is assigned.

The testimony makes it clear that the order was entered before the bond and contract were executed. The order provides that the thirty-one thousand dollars of bonds should be delivered to the First National Bank of Weatherford to the credit of Milliken & Co. upon the approval of the bond now in suit; the contract, made part of this latter bond, provides that the county bonds shall be delivered to Milliken & Co. at the discretion of the county commissioners. These provisions are wholly inconsistent with each other. The commissoners could not have discretion as to the time and mode of the delivery and yet be compelled to deliver to the bank so soon as the bond was executed.

The question is: By which of the two are the rights of the parties to be determined? The general rule is that where the written contract is clear and certain, it must be taken to express the will of the parties, and it is not proper to look elsewhere for their intention. (Jones on Com. and Trade Con., sec. 174.) All preliminary negotiations, whether written or unwritten, which have led to the execution of the agreement, are deemed to have been absorbed and merged in it, and the writing must be taken as expressing the final views of the parties. (2 Whart. on Con., sec. 643.)

It may be read in the light of surrounding circumstances to explain its meaning when obscure or uncertain, but not to contradict the meaning where it is perfectly plain. Contemporaneous writings may be taken into consideration when they are reciprocally dependent, and the meaning of one can not be wrought out without the introduction of the other; but we know of no rule which admits them for the purpose of showing that the parties did not agree upon a stipulation plainly expressed in a writing, which purports to be the final and only contract made between them, unless fraud or mistake in inserting the stipulation has been proved. (2 Whart. on Con., sec. 665.)

The order sought to be introduced in evidence was made before the contract was signed. There is nothing to show that the minds of the parties had, at the time, met as to what should be the stipulations of the contract as to which they were negotiating. The commissioners were willing to issue the bonds, and did authorize them to be issued. They were willing to deposit

them in bank to the credit of Milliken & Co., upon approval of
the bond required of the latter as contractors for the building of
the court house.   But the mere entry of the order upon the
minutes did not complete the contract.   Milliken & Co. had as-
sumed no obligation.   They were not bound to build the court
house, or the county to deliver the bonds.   Everything that Mil-
liken & Co. were to do remained subject to future contract; and,
until the county was satisfied with his stipulations, it was au-
thorized to withdraw or change any or all assumed by itself.
The contract was subsequently made, and is full and complete
in all its parts.   All of the obligations on the part of Milliken
& Co. are set forth in it; the county, too, has had its stipula-
tions fully stated, and they are the same in every respect with
those contained in the order, except as to the immediate delivery
of the bonds.   Upon what principle are we to hold that the
terms of the order as to the delivery of the bonds are to take
the place of those of the completed and fully executed contract?
There is nothing ambiguous about the provision that the bonds
are to be delivered at the discretion of the commissioners.
They could not by any interpretation be made to mean that
the county should deliver them at all events so soon as the con-
tractors executed their bond to the county, whether they wished
to do so or not.   That would be to allow it no discretion what-
ever in the matter.   Even if it were somewhat doubtful as to
what was meant by the expression, it would not be proper to
resort to other evidence to show that they meant something
directly opposite to any sense in which the terms could be taken.

The only conclusion to be drawn from the difference between
the language of the order and that of the contract is that after
the order was made and before the contract was signed the
parties agreed upon a change as to the time and manner in
which the county bonds were to be delivered.   This they had
the right to do, and the contract was conclusive proof upon the
subject, which could not be contradicted by parol evidence.   We
think the order was inadmissible and the court did not err in
excluding it.

What we have said disposes of the question as to the admissi-
bility of the order of October 26, 1883.   The contract, made part
of the bond sued on, allowed the county to deliver the bonds at
its discretion.   This bond was approved October 26, 1883, and,
on the same day, an order was entered for the immediate issu-
ance of sixteen thousand dollars in bonds, and fifteen thousand

dollars more when the court house should be completed. This was an exercise of the discretion reserved to the county in the contract; and the order of September 19, 1883, having been, by consent of parties, disregarded in making the contract, its repeal did not affect the rights of either Milliken & Co. or their sureties upon the bond. The repealing order was therefore of no importance in the case.

The evidence of Milliken and his co-defendants was also properly excluded. The plaintiff's right of recovery could not be affected by any occult reasons the defendants might have had for signing the bond, when they could not possibly have been mistaken as to its terms, and the county had been guilty of no fraud in obtaining their signatures.

Milliken & Co., as appears from the evidence, voluntarily abandoned the contract, hence they were not entitled to introduce evidence as to the damages suffered by them by reason of any default of the plaintiff in not performing their part of the contract. There was no necessity to prove the value of the bonds. The county was bound for their par value, and that was the amount of damage suffered by it in consequence of their being in circulation.

There is no error in this judgment, and it is affirmed.

*Affirmed.*

Opinion delivered November 22, 1887.